# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————
)
ZEYAD ABDELJABBAR,            )
                             )
        Plaintiff,           )
                             )
        v.                )     Civil Action No. 1:13-cv-0330 (RBW)
                             )
BUREAU OF ALCOHOL, TOBACCO  )
AND FIREARMS, et al.,        )
                             )
        Defendants.      )
———————————————————————)

## MEMORANDUM OPINION

Zeyad Abdeljabbar, the pro se plaintiff in this civil matter, alleges that the defendants, the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), the Executive Office for United States Attorneys ("EOUSA"), and the Federal Bureau of Investigation ("FBI"), violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2012), by failing to respond adequately to FOIA document requests submitted by the plaintiff.  Complaint ("Compl.") at 2-3, 5.  Specifically, the plaintiff requested from the defendants "any and all investigative documents in the files of [the defendants], from the criminal case United States v. Zeyad Abdeljabbar, 4:07CR2114, [prosecuted] in the Eastern District of Missouri," as well as certain "information [from] the file on the government testifying witness[es]." Id.  The defendants have moved for summary judgment, asserting that they "have already disclosed all non-exempt information to [the] [p]laintiff."  Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem.") at 2.  After carefully considering the Complaint, the Defendants' Motion for Summary Judgment ("Defs.' Mot."), and the memoranda of law

submitted in support of the motion, the Court concludes for the reasons that follow that it must grant the defendants' motion.[1]

## I. BACKGROUND

In compliance with the obligations set forth in <u>Fox v. Strickland</u>, 837 F.2d 507 (D.C. Cir. 1988), and <u>Neal v. Kelly</u>, 963 F.2d 453 (D.C. Cir. 1992),[2] the Court issued an order on January 23, 2014, advising the plaintiff of the potential consequences of failing to respond to the defendants' motion for summary judgment, and ordered the plaintiff to respond to the motion by March 3, 2014.  ECF No. 23.  As of the date of this Memorandum Opinion, the plaintiff has not responded to the defendants' motion for summary judgment.  Accordingly, the Court accepts as true the factual assertions submitted in support of the defendants' motion.  <u>See</u> <u>Neal</u>, 963 F.2d at 456.

### A.  ATF Request No. 12-951

The plaintiff alleges that he submitted a FOIA request to the ATF on April 3, 2012, demanding that he be provided "any and all investigative documents in the files of [the ATF], from the criminal case <u>United States v. Zeyad Abdeljabbar</u>,  4:07CR2114, [prosecuted] in the Eastern District of Missouri," as well as certain "information [from] the file on the government testifying witness[es]."  Compl. at 2; Boucher Decl., Exhibit ("Ex.") A at 1.  On May 26, 2012, the plaintiff lodged a FOIA appeal with the United States Department of Justice's Office of

---

[1] The Court considered the following submissions in reaching its decision: (1) the Complaint ("Compl."); (2) the Defendants' Motion for Summary Judgment ("Defs.' Mot."); (3) the Defendants' Statement of Material Facts Not in Genuine Dispute ("Defs.' Statement"); (4) the Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem."); (5) the Declaration of Stephanie M. Boucher, Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives ("Boucher Decl."); (6) the Declaration of David Luczynski ("Luczynski Decl."); and (6) the Declaration of David M. Hardy ("Hardy Decl.").

[2] In <u>Fox</u>, this Circuit held that a Court must provide notice to parties appearing <u>pro se</u> that the failure of a party to respond to a dispositive motion "may result in the district court granting the motion and dismissing the case."  837 F.2d at 509.  Further, in <u>Neal</u>, this Circuit held that a Court must inform <u>pro se</u> litigants that, on a motion for summary judgment, "any factual assertions in the movant's affidavits will be accepted by the district judge as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion."  963 F.2d at 456 (internal quotation and citation omitted).

Information and Privacy ("OIP"), Defs.' Statement ¶ 1, claiming that he "ha[d] not heard from [the ATF]" and was "taking the non-response as a denial of [his] request," Boucher Decl., Ex. A at 1.  Upon review, the ATF determined that it "had not received a FOIA request from [the plaintiff]."  See Defs.' Statement ¶ 4.  The ATF advised the plaintiff of this by letter dated June 18, 2012, and noted that the plaintiff "could resubmit a FOIA request to [the] ATF."  Id.

When the plaintiff filed his Complaint with the Court on February 13, 2013, the ATF "treated that [C]omplaint as an initial FOIA request."  Id. ¶ 5.  "By letter dated September 24, 2013, [the] ATF's Disclosure Division granted [the] [p]laintiff's request, in part."  Defs.' Statement ¶ 6.  "Portions of responsive records were withheld under Exemptions (b)(3), (b)(7)(C)[,] and (b)(7)(E) of the FOIA," id., the ATF having "reviewed each page of the material identified as responsive to ensure that no additional information could be released . . . [and that] [a]ll releasable information ha[d] been provided to [the plaintiff]," Boucher Decl. ¶ 42.

**B.  EOUSA Request Nos. 12-1412, 12-1414, and 12-3509**

On April 3, 2012, the plaintiff submitted a FOIA request to the EOUSA, which was largely identical in substance to the request he submitted to the ATF.  Compl. at 3.  By letter dated May 2, 2012, the EOUSA "informed [the] plaintiff" that, with respect to his request for records of third parties, "it is the policy of the EOUSA to neither confirm nor deny that records concerning living third parties exist."  Defs.' Statement ¶ 15.  Following receipt of this letter, the plaintiff "submitted a modified request for third parties . . . requesting only public records relating to the third parties."  Luczynski Decl. ¶ 14.[3]

---

[3] Concurrently, the plaintiff also filed an appeal of this determination to the DOJ's OIP.  Defs.' Statement ¶ 16.  "By letter dated September 17, 2012, [the] OIP informed [the] plaintiff that it ha[d] affirmed [the] EOUSA's decision in refusing to confirm or deny the existence of records responsive to his request and that, without consent, proof of death, or an overriding public interest, confirming or denying the existence of such records would constitute an unwarranted invasion of personal privacy."  Id. ¶ 18.

On April 29, 2013, the EOUSA granted the plaintiff's modified request, in part, and informed the plaintiff that "his request has been processed and that 58 pages had been released in full ("RIF"), 141 pages had been released in part ("RIP"), and 197 pages of records had been withheld in full ("WIF")."  Defs.' Statement ¶ 14.  The EOUSA noted in its letter that it withheld certain information pursuant to FOIA Exemptions (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D).[4]  Id. The EOUSA asserts in its declaration that "[a]ll information withheld was exempt from disclosure pursuant to a FOIA exemption . . . [and] no reasonably segregable non-exempt information was withheld from [the] plaintiff."  Luczynski Decl. ¶ 39.

## C.  FBI Request No. 1188333-000

On March 30, 2012, the plaintiff submitted a FOIA request to the FBI, which was also largely identical in substance to the requests he submitted to the ATF and the EOUSA.  Compl. at 5.  "By letter dated December 19, 2013, the FBI advised [the] [p]laintiff that it had reviewed 97 pages and it was releasing 59 pages[5] to him . . . [and that] it had withheld information pursuant to . . . FOIA Exemptions (b)(1), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E)."  Defs.' Statement ¶ 28.  According to the FBI, "[n]o reasonably segregable, nonexempt portions were

---

[4] Both the EOUSA and the FBI assert that had the plaintiff sought these records under the Privacy Act, 5 U.S.C. § 552a, withholding this information would also be appropriate pursuant to Exemption (j)(2) of that Act.  See Defs.' Statement ¶¶ 14, 28.  The Court need not consider the applicability of the Privacy Act's exemptions because the plaintiff does not allege violations of that Act.  Moreover, an agency may not rely exclusively "on any exemption in [the Privacy Act] to withhold from an individual any record which is otherwise accessible to such individual under the provisions of [the FOIA]."  5 U.S.C. § 552a(t)(2).

[5] The Court notes several inconsistencies in the FBI's representations as to the number of pages reviewed, as well as the number of pages released.  While the letter to the plaintiff states that the FBI reviewed 96 pages and 58 were released, Hardy Decl., Ex. G at 1, the Defendants' Statement of Material Facts represents that the FBI reviewed 97 pages and released 59, Defs.' Statement ¶ 28.  Furthermore, the FBI acknowledges that "[u]pon coding the material, it was found that 102 pages were actually reviewed."  Hardy Decl. ¶ 12 n.3.  The Court reviewed the Bates stamped documents that the FBI released to the plaintiff, included as Exhibit H to the Declaration of David M. Hardy, and concludes that the FBI actually reviewed 102 pages, released 59 pages with redactions, and withheld in full 43 pages.  See Hardy Decl., Ex. H.  The FBI having provided the plaintiff with Bates stamped documents accounting for all of the 102 pages it reviewed, the Court concludes that the inconsistency reflected in the FBI's cover letter is an unintentional clerical error that in no way has prejudiced the plaintiff.

withheld from [the] plaintiff," Hardy Decl. ¶ 24, and that "all material which the FBI has

withheld is exempt from disclosure pursuant to one or more FOIA exemptions," id. ¶ 28.

## I. STANDARD OF REVIEW

Courts will grant a motion for summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of

a genuine issue of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and may do

so by "citing to particular parts of materials in the record, including . . . affidavits or

declarations," Fed. R. Civ. P. 56(c)(1)(A). "[A] dispute about a material fact is 'genuine' . . . if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an

element of the nonmoving party's claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986). Factual assertions in the moving party's affidavits or declarations may be accepted as

true unless the opposing party submits affidavits or declarations or documentary evidence to the

contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992). In opposing a summary judgment

motion, a party may not "replace conclusory allegations of the complaint . . . with conclusory

allegations of an affidavit," Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990), but rather

must "set forth specific facts showing that there is a genuine issue for trial," Liberty Lobby, 477

U.S. at 248 (internal quotations omitted).

Courts review an agency's response to a FOIA request de novo, 5 U.S.C. § 552(a)(4)(B),

and "FOIA cases typically and appropriately are decided on motions for summary judgment,"

ViroPharma Inc. v. HHS, 839 F. Supp. 2d 184, 189 (D.D.C. 2012) (citations omitted). In a

FOIA action to compel production of agency records, the agency "is entitled to summary

judgment if no material facts are in dispute and if it demonstrates 'that each document that falls

within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'"  Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)).

Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and nonconclusory," Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotations and citations omitted), and when they:

> [d]escribe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith.

Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records."  Span v. U.S. Dep't of Justice, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989)).

## II. ANALYSIS

In his Complaint, the plaintiff sets forth only generalized allegations, noting that the defendants are in "violation of FOIA" by not releasing all responsive records.  See Compl. at 3 ("[The ATF] is in gross violation of FOIA, by not respon[d]ing and releasing records and information requested.  There is no legal justification for the nonresponse of [the ATF]."); id. at 5 ("EOUSA is in violation of EOUSA [sic], by not adequately responding to [the] [p]laintiff's specific FOIA request for records on self, [t]hird [p]arties, as well as [t]hird [p]arties 'Public Records.'"); id. at 6 ("FBI is in gross violation of FOIA, by no [sic] provided [sic] the requested records within its files, as mandated by Congress.").  To prevail on their summary judgment

motion, the defendants "must show beyond material doubt that [they] ha[ve] conducted . . .

search[es] reasonably calculated to uncover all relevant documents," Morley v. CIA, 508 F.3d

1108, 1114 (D.C. Cir. 2007), and that each document identified as responsive "has been

produced . . . or is wholly exempt from" disclosure, Students Against Genocide, 257 F.3d at 833.

For the reasons that follow, the Court finds that: (1) the defendants conducted reasonable and

adequate searches; and (2) the defendants withheld from disclosure only information for which a

FOIA exemption properly applies.

## A. Adequacy of the Defendants' Searches

The adequacy of an agency's search is measured by a standard of reasonableness under

the attendant circumstances. Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990). To

satisfy its burden to show that no genuine issue of material fact exists, the defendant must show

that each agency component "has conducted a search reasonably calculated to uncover all

relevant documents," Elliott v. U.S. Dep't of Agric., 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting

Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983)), and it may base its

showing on affidavits or declarations submitted in good faith, see Truitt, 897 F.2d at 542,

provided that these affidavits or declarations explain in reasonable detail the scope and method

of the search, see Morley, 508 F.3d at 1116 (citing Goland, 607 F.2d at 352). "In the absence of

contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's

compliance with [the] FOIA." North v. U.S. Dep't of Justice, 774 F. Supp. 2d 217, 222 (D.D.C.

2011) (citing Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982)). There is no requirement that

an agency search every record system in response to a FOIA request; rather, it may limit its

search to only those locations where responsive documents likely are maintained. Porter v. CIA,

778 F. Supp. 2d 60, 69–70 (D.D.C. 2011). However, if the record "leaves substantial doubt as to

the sufficiency of the search, summary judgment for the agency is not proper." Beltranena v. Clinton, 770 F. Supp. 2d 175, 183 (D.D.C. 2011) (quoting Truitt, 897 F.2d at 542); see also Valencia–Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999) (stating that summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search (citation omitted)).

### 1. The ATF's Search

Stephanie Boucher, the Chief for ATF's Disclosure Division, Boucher Decl. ¶ 2, asserts in her declaration that the "ATF undertook a complete and thorough search for all documents responsive to [the plaintiff's] FOIA request.  All indices and file systems . . . that would contain information pertaining to [the plaintiff] were reasonably searched." Id. ¶ 19.  Specifically, she represents that "[b]ased upon the information provided by [the plaintiff] in [his] FOIA request," the ATF "conducted a search of N-Force and located the investigation number relating to [the plaintiff's] [criminal] investigation."  Boucher Decl. ¶ 11.  As she explains:

> 'N-Force' is a case management system designed to support ATF law enforcement operations and acts as a single-point of data entry system, which enables users to store, utilize, and query investigative information, and to prepare investigative documents.  N-Force is ATF's official case file of record for documenting investigative activity and information, creating reports, tracking investigative leads and linking data.

Id. ¶ 12.  The ATF's "search indicated that [the plaintiff]'s case, Investigation Number 779050-03-0135, was closed and [related documents] had been archived." Id. ¶ 16.  "Once the documents were received from archives, the documents responsive to [the plaintiff]'s FOIA request were forwarded via Federal Express to the Disclosure Division."  Id.  Additionally, the ATF conducted a search of the Treasury Enforcement Communications System ("TECS") for documents responsive to the plaintiff's request.  Id. ¶ 17.  The ATF notes in its declaration that:

> TECS is a text-based database, owned and maintained by the Bureau of Customs and Border Protection, U.S. Department of Homeland Security, and contains

information that may be of interest to law enforcement agencies. TECS is a computerized information system designed to identify individuals and businesses suspected of or involved in violation of Federal law. TECS is also a communications system permitting message transmittal between Federal law enforcement offices and other international, state, and local law enforcement agencies.

Id. The field office responsible for investigating the plaintiff's case also "conducted an independent and thorough search for all materials responsive to [the] plaintiff's FOIA request," id. ¶ 15, and forwarded the responsive documents to the ATF's Disclosure Division, id. ¶ 16.

The ATF searched N-Force, its centralized case management system, TECs, an interagency communications system, and the records of the field office responsible for investigating the plaintiff's case—methods which it contends were "reasonably expected to produce the information requested." Defs.' Mem. at 6. Based upon these representations, the ATF's declaration sets forth sufficient factual detail of the methods it utilized in conducting its search for documents responsive to the plaintiff's request. See, e.g., McRae v. U.S. Dep't of Justice, 869 F. Supp. 2d 151, 160-62 (D.D.C. 2012) (finding adequate the ATF's search of TECS and N-Force in order to respond to the plaintiff's FOIA request). The plaintiff offers no basis for finding these search methods to be deficient. Accordingly, the Court concludes that ATF's search was adequate.

## 2. The EOUSA's Search

Following receipt of the plaintiff's FOIA request, the EOUSA "began a systematic search for records on [the plaintiff], to determine the location of any and all files relating to him in order to comply with the request." Luczynski Decl. ¶ 17. The EOUSA "searched for records from the case files in that case," and "sent e-mails to the Assistant United States Attorney in the Criminal Division to ascertain whether they had any responsive records." Id. The EOUSA also queried

the United States Attorney's Offices' "LIONS" system for responsive information.  Id.  The

EOUSA explains that:

> The "LIONS" system is a computer system used by United States Attorney[']s [O]ffices to track cases and to retrieve files pertaining to cases and investigations. By use of the "LIONS" system, the user can access databases which can be used to retrieve the information based on a defendant's name, the USAO number (United States' Attorney's Office internal administrative number), and the district court case number.

Id.  The EOUSA asserts that "[e]ach United States Attorney's Office maintains the case files for

criminal matters prosecuted by that office," "[a]ll documents responsive to [the] plaintiff's

request have been located in the United States Attorney[']s Office for the Eastern District of

Missouri," and "[t]here are no other records systems or locations within the Eastern District of

Missouri in which other files pertaining to [the] plaintiff's criminal case, were maintained."  Id.

¶¶ 17-19.

The EOUSA's declaration "sets forth in reasonable detail, the steps taken by [the

EOUSA] in finding records responsive to [the] [p]laintiff's request."  Defs. Mem. at 12.  Based

upon these methods, the defendants assert that the "EOUSA conducted a search that was

reasonably expected to uncover [responsive] documents."  Id.  The plaintiff sets forth no

justification for the Court to find otherwise.  Accordingly, the Court concludes that the EOUSA's

search was adequate.  See, e.g., Jones v. Exec. Office for the U.S. Attorneys, 959 F. Supp. 2d 52,

54-55 (D.D.C. 2013) (finding adequate the EOUSA's search of LIONS and related case files in

order to respond to the plaintiff's FOIA request).

### 3.  The FBI's Search

"In response to [the] plaintiff's [FOIA] request, the FBI conducted a search of the

automated indices to the [Central Records System] in order to identify all potentially responsive

main files indexed to the name of [the plaintiff]."  Hardy Decl. ¶ 19.  Specifically, the FBI

searched for the records "utilizing a six and three-way phonetic breakdown of his name,

including any variations of his first or last name that sound similar or are similar but spelled

differently," also using the "[p]laintiff's date of birth and social security number . . . to facilitate

the identification of responsive records." Id. ¶ 19.  As the FBI explains in its declaration:

> The Central Records System ('CRS'), which is utilized to conduct searches in response to FOIA and Privacy Act requests, enables the FBI to maintain all information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities.  The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes.

Id. ¶ 13.  By letter dated April 26, 2012, the FBI advised the plaintiff that "it conducted a search

of its Central Records System and it was unable to identify any main investigative records

responsive to [the plaintiff's] [FOIA] request." Defs.' Statement ¶ 24.  The plaintiff appealed the

FBI's response to the DOJ's OIP, id. ¶ 25, which ultimately affirmed the FBI's action, id. ¶ 27.

"Upon learning of this litigation, the FBI conducted another search to identify potentially

responsive cross-reference files." Id. ¶ 28.  "A cross-reference is defined as a mere mention of,

or passing reference to, other individuals, organizations, events, or activities."  Hardy Decl. ¶ 20.

The FBI did not search for cross-reference files during its initial search because "[i]t is the FBI's

current policy to search for, identify and process only main files at the initial administrative state

of" requests submitted pursuant to the FOIA and the Privacy Act.  See id. ¶ 19.  Following this

search, "the FBI located several responsive cross-reference entries" at the FBI's headquarters

and at several field office locations.  Id. ¶ 20.

The FBI's declaration sets forth sufficient factual detail of the methods it utilized in

conducting a search for documents responsive to the plaintiff's request.  See, e.g., Dent v. Exec.

Office for U.S. Attorneys, 926 F. Supp. 2d 257, 265-67 (finding adequate the FBI's search of its

Central Records System, in response to the plaintiff's FOIA request).  The plaintiff has not

disputed the FBI's assertion that it "performed a search using methods which can be reasonably expected to produce the information requested."  Defs.' Mem. at 21 (internal quotations and citations omitted).  Accordingly, the Court concludes that the FBI's search was adequate.

## B.  The FOIA Exemptions Asserted by the Defendants[6]

### 1.  Exemption (b)(1)

Pursuant to Exemption (b)(1), an agency may withhold documents "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  The Court must "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record because the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of a particular classified record."  Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 927 (D.C. Cir. 2003) (internal quotations and citations omitted) (alteration in original).

The FBI invoked Exemption (b)(1) as the basis for withholding classified information that "pertains to intelligence activities (including covert action), intelligence sources or methods, or cryptology."  Hardy Decl. ¶ 33.  Executive Order 13,526, "which governs the classification and protection of information that affects the national security," id. ¶ 30, specifically authorizes agencies to classify this category of information, Exec. Order No. 13,526, § 1.4(c), 3 C.F.R. 298, 300 (2009).  The Section Chief of the Record/Information Dissemination Section of the FBI "independently examined the information withheld from [the] plaintiff pursuant to FOIA

---

[6] To summarize, the ATF withheld portions of records pursuant to FOIA Exemptions (b)(3), (b)(7)(C), and (b)(7)(E). Defs.' Statement ¶ 6.  The EOUSA withheld portions of records pursuant to FOIA Exemptions (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D). Id. ¶ 14.  The FBI withheld portions of records pursuant to FOIA Exemptions (b)(1), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Id. ¶ 28.

Exemption [(b)(1)] . . . [and] determined that the classified information continues to warrant

classification . . . pursuant to [Executive Order 13526]."  Hardy Decl. ¶ 33.  This is because:

> The disclosure of this information could reasonably be expected to cause serious
> damage to the national security, as it would: (a) reveal the actual intelligence
> activity or method utilized by the FBI against a specific target; (b) disclose the
> intelligence-gathering capabilities of the method; and (c) provide an assessment of
> the intelligence source penetration of a specific target during a specific period of
> time.

Id. ¶ 38.  The Section Chief is an "original classification authority" who examined the

information "in light of the body of information available to [him] concerning the national

defense and foreign relations of the United States."  Id. ¶¶ 39-40.

The FBI has offered sufficient factual detail for the Court to conclude that the category of

information withheld under this Exemption may be classified according to Executive Order

13526, and that the specific documents in question were properly classified pursuant to that

Order.  The plaintiff has not offered a justification to find otherwise.  Accordingly, the Court

concludes that the FBI properly withheld this information pursuant to Exemption (b)(1).[7]  See,

e.g., Nat'l Sec. Counselors v. CIA, 960 F. Supp. 2d 101, 166 (D.D.C. 2013) ("Although many

details of these two documents remain unknown, the [government]'s declaration plausibly

establishes that the withheld information relates to sensitive operations within the Intelligence

Community, the substance of which is properly classified in the interest of national security. That

is sufficient to grant summary judgment."); DiBacco v. U.S. Dep't of the Army, 983 F. Supp. 2d

44, 61 (D.D.C. 2013) ("[The government]'s unrebutted declaration establishes with a reasonable

level of specificity that the information at issue was properly classified . . . and thus was properly

---

[7] The FBI also asserts that it withheld this information pursuant to Exemption (b)(3).  The Court having concluded
that the FBI properly withheld this information pursuant to Exemption (b)(1), it need not also consider the
applicability of Exemption (b)(3).  See Larson v. Dep't of State, 565 F.3d 857, 862-63 (D.C. Cir. 2009) ("[A]gencies
may invoke the exemptions independently and courts may uphold agency action under one exemption without
considering the applicability of the other." (citation omitted)).

withheld under FOIA exemption (b)(1). Therefore, the agency is entitled to summary judgment on this issue.").

### 2. Exemption (b)(3)

Pursuant to Exemption (b)(3), an agency may withhold information "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), so long as the statute:

> (A)(i) requires [withholding] from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and

> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

Id. To prevail on summary judgment, the agency "need only show that the statute claimed is one of exemption as contemplated by Exemption [(b)(3)] and that the withheld material falls within the statute." Larson v. Dep't of State, 565 F.3d 857, 865 (D.C. Cir. 2009) (citation omitted).

### a. The ATF's Application of Exemption (b)(3)

Pursuant to Exemption (b)(3), and in conjunction with Federal Rule of Criminal Procedure 6(e), the ATF withheld "[grand jury] subpoenas, documents obtained under grand jury subpoenas, transcripts, and indictments." Boucher Decl. ¶ 25. Rule 6(e) provides "broad" secrecy to "matters occurring before the grand jury," Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 869 (D.C. Cir. 1981), and Exemption (b)(3) "applies if the disclosed material would tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, or the deliberations or questions of jurors," Hodge v. FBI, 703 F.3d 575, 580 (D.C. Cir. 2013) (internal quotations and citations omitted). The plaintiff has not challenged the FBI's assertion of Exemption (b)(3) for grand jury-related documents, and the

Court finds that the ATF has offered sufficient factual detail to conclude that it properly withheld this information under this exemption.  See, e.g., id.

Pursuant to Exemption (b)(3), and in conjunction with the Consolidated and Further Continuing Appropriations Act of 2012 ("Act of 2012"), Public Law 112-55, the ATF also withheld "[t]race [i]nformation relating to a co-conspirator."  Boucher Decl. ¶ 26.  Specifically, the ATF withheld "portions . . . of a firearms Trace Report wholly derived from the contents of the Firearms Trace System Database."  Id. ¶ 30.  "Trace Reports are based and derived from information required to be kept by a Federal Firearms Licensee (FFL) pursuant to 18 U.S.C. § 923(g)," id., which requires, in part, that "[e]ach licensed [firearms] importer, licensed [firearms] manufacturer, and licensed [firearms] dealer shall maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe," 18 U.S.C. § 923(g).  The Act of 2012 restricts the ATF from disclosing this information, by requiring:

> That, during the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section, except to: (1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose; unless such disclosure of such data to any of the entities described in (1), (2) or (3) of this proviso would compromise the identity of any undercover law enforcement officer or confidential informant, or interfere with any case under investigation; and no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data; and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol,

Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such
title, or a review of such an action or proceeding . . . .

Consolidated and Further Continuing Appropriations Act of 2012, Pub. L. No. 112-55, 125 Stat.

552, 609-10.  Based upon this statutory language, the ATF asserts that it properly withheld the

trace information concerning a co-conspirator pursuant to Exemption (b)(3) because it "can only

provide trace data to a law enforcement agency or a prosecutor solely in connection with a bona

fide criminal investigation or prosecution, and then only such information as pertains to their

geographic jurisdiction."  Boucher Decl. ¶¶ 27-30.

    Iterations of the Act of 2012's language quoted above have appeared in each of the

consolidated appropriations acts of Congress since at least 2005.  See, e.g., Consolidated

Appropriations Act, 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3128-29; Consolidated

Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844, 1903-904; Consolidated

Appropriations Act, 2005, Pub. L. No. 108-447, 118 Stat. 2809, 2859-60.  And based on this

particular language, read in conjunction with Exemption (b)(3), other members of this Court

have held consistently, until recently, that the ATF may withhold trace information derived from

the Firearms Trace System Database.  See Higgins v. U.S. Dep't of Justice, 919 F. Supp. 2d 131,

145 (D.D.C. 2013) (finding the withholding of trace information pursuant to Exemption (b)(3)

proper because "[t]he appropriations legislation on which [the ATF] relies explicitly bars

disclosure of information maintained by the National Trace Center . . . or any information

required to be kept by licensees pursuant to [18 U.S.C. § ] 923(g)" (internal quotation omitted));

McRae, 869 F. Supp. 2d at 163 ("Congress has expressly prohibited ATF from releasing such

documents to the public."); Singh v. FBI, 574 F. Supp. 2d 32, 45–46 (D.D.C. 2008) (agency

properly withheld firearms transaction records); Miller v. U.S. Dep't of Justice, 562 F. Supp. 2d

82, 111–12 (D.D.C. 2008) (agency properly withheld firearms trace reports); Watkins v. Bureau

of Alcohol, Tobacco & Explosives, No. 04–800, 2005 WL 2334277, at *1 (D.D.C. Sept. 1, 2005)

(concluding that the 2005 appropriations legislation "prevent[s] the public release of sensitive

firearms trace data not so much for budgetary reasons than out of concern that such disclosures

could jeopardize criminal investigations").

In September of this year, however, another member of the Court declined to follow this

otherwise consistent reasoning, finding that the appropriations language in question no longer

satisfies Exemption (b)(3)'s requirements.  See Fowlkes v. ATF, __ F. Supp. 3d __, __, No. 13-

0122, 2014 WL 4536909, at *6-7 (D.D.C. Sept. 15, 2014).  Specifically, Fowlkes drew attention

to the OPEN FOIA Act of 2009, which amended Exemption (b)(3) and provides that any statute

"enacted after the date of enactment of the OPEN FOIA Act of 2009" must "specifically cite to

this paragraph" for an agency to rely on it to withhold information under Exemption (b)(3).  Pub.

L. No. 111-83, 123 Stat. 2142 (2009) (codified as amended at 5 U.S.C. § 552(b)(3)).  In other

words, the Court in Fowlkes found that the statutory disclosure prohibitions enacted after

October 8, 2009, must specifically reference Exemption (b)(3) if the prohibition is intended to

limit FOIA disclosures.  See id.  Relying exclusively on a decision from the Eastern District of

Michigan, Fowlkes concluded that, because "ATF's declarant d[id] not state that the

Consolidated Appropriations Act of 2012 specifically refers to [Exemption (b)(3)] . . . [,] the

ATF d[id] not demonstrate that Exemption [(b)(3)] applies."  Fowlkes, __ F. Supp. 3d at __,

2014 WL 4536909, at *6-7 (citing Smith v. ATF, No. 13-13079, 2014 WL 3565634, at *5 n.2

(E.D. Mich. July 18, 2014)).  To support this proposition, Fowlkes cites a portion of the Smith

decision wherein a judge of the Eastern District of Michigan noted that "the Consolidated

Appropriations Act of 2010 does not appear to satisfy [the OPEN FOIA Act of 2009 amendment

to] Exemption [(b)(3)]."  Smith, 2014 WL 3565634, at *5 n.2.  What Fowlkes omits from its

analysis, however, is that the Court in <u>Smith</u> ultimately concluded that this issue did not "need

[to] be addressed . . . as the Consolidated Appropriations Act of 2008 does satisfy that subsection

and . . . provides a <u>permanent prohibition</u> against disclosure that is not limited to the fiscal year

of the appropriated funds granted therein."   <u>Id.</u> (emphasis added).   The Court in <u>Smith</u>

explained:

> Congress could not have been more specific about what types of records should
> be withheld.   The [Consolidated Appropriations Act of 2008] obviously states the
> criteria for withholding records, satisfying Exemption [(b)(3)] . . . .   [T]he
> application of the Act to Exemption [(b)(3)] is reasonable and consistent with the
> applicable law because the Act is a permanent law that does not merely apply to a
> single fiscal year.   Although it is an appropriations bill for the fiscal year of 2008,
> the pertinent paragraph begins by stating "[t]hat, beginning in fiscal year 2008
> and thereafter, no funds appropriated under this or any other Act may be used to
> disclose part or all of the contents of the Firearms Trace System database."   The
> Act's prohibition on disclosure continues beyond fiscal year 2008 ("and
> thereafter"), and it also extends to all other laws ("any other Act").   The
> prohibition on the expenditure of appropriated funds to disclose records from the
> Firearms Trace System, therefore, extends laterally to other existing laws, but also
> prospectively and beyond fiscal year 2008.

<u>Id.</u> at *6 (internal quotations, citations, and footnotes omitted).   Thus, it appears that <u>Smith</u>'s

holding supports a position contrary to the proposition for which it is cited in <u>Fowlkes</u>.

For the reasons articulated in <u>Smith</u>, the Court finds that the disclosure prohibitions set

forth by Congress in the 2005 and 2008 appropriations bills are still effective prospectively and

beyond those fiscal years as a permanent prohibition, until such time as Congress expresses the

intent to repeal or modify them.   Thus, the only remaining question is whether the successive

appropriations bills effectively repealed the language found in the 2005 and 2008 Acts.

"[R]epeals by implication are not favored, . . . and will not be found unless an intent to repeal is

clear and manifest."   <u>Rodriguez v. United States</u>, 480 U.S. 522, 524 (1987) (citations omitted).

Thus, "a later statute will not be held to have implicitly repealed an earlier one unless there is a

clear repugnancy between the two."   <u>United States v. Fausto</u>, 484 U.S. 439, 453 (1988) (citation

omitted).  Congress's decision to incorporate similar language into appropriations bills after

2009 demonstrates its intent to continue the disclosure prohibition; to find otherwise would

require this Court to reach the implausible conclusion that Congress intended to repeal by

implication a disclosure prohibition, at least with respect to FOIA, by reiterating that very

prohibition in subsequent legislation.  And such a conclusion would contravene the strong

presumption "that Congress will specifically address language on the statute books that it wishes

to change."  See id.

     Moreover, the Supreme Court has long-held that "[t]he normal rule of statutory

construction is that if Congress intends for legislation to change the interpretation of a judicially

created concept, it makes that intent specific."  Midlantic Nat'l Bank v. N.J. Dep't of Envt'l

Protection, 474 U.S. 494, 501 (1986) (quoting Edmonds v. Compagnie Generale Transatlantique,

443 U.S. 256, 266-67 (1979)).  Given the plethora of decisions from this Court holding that the

appropriations language in question is an appropriate statutory predicate for withholding

information pursuant to Exemption (b)(3), Congress's uninterrupted use of this language in

appropriations bills after 2009 supports the conclusion that Congress did not intend for the

judiciary to depart from this long-standing position.

     Other district courts that have addressed this issue since the enactment of the OPEN

FOIA Act of 2009 have not held to the contrary.  See Caruso v. ATF, No. 10-6206, 2011 WL

669132, at *3 n.1 (D. Oregon Feb. 16, 2011) (raising the possibility that the OPEN FOIA Act of

2009 may have negated the applicability of this exemption to trace information, but declining to

find the exemption applicable on other grounds), rev'd on other grounds 495 Fed. App'x 776

(9th Cir. 2012) ("[T]he information [the plaintiff] seeks squarely falls under the statutory

language of the Appropriations Act and within the scope of Exemption [(b)(3)].");  Penn v. U.S.

<u>Dep't of Justice</u>, No. S-10-2494, 2012 WL 761741, at *6 n.3 (E.D. Cal. Mar. 7, 2012) ("Although it does not appear that the 2010 appropriations bill cites to § 552(b)(3), and although it appears to have been enacted in October 2009, because the 2005 and 2008 appropriations bills also apply here, and were enacted prior to the OPEN FOIA Act of 2009, that issue need not be addressed."), <u>report and recommendation adopted</u>, 2012 WL 1131537 (E.D. Cal. Mar. 28, 2012).

For the foregoing reasons, the Court concludes that the 2005 and 2008 appropriations language continues to satisfy the requirements of FOIA's Exemption (b)(3), and may be invoked by the ATF to withhold the trace information.[8]  The plaintiff offers no justification for this Court to find otherwise.  Accordingly, the Court concludes that the ATF properly withheld the information pursuant to Exemption (b)(3).

### b.   The EOUSA's Application of Exemption (b)(3)

Pursuant to Exemption (b)(3), the EOUSA withheld grand jury information from its response to the plaintiff's FOIA request, including "grand jury transcripts . . . , information that would reveal the identities of witnesses or jurors, the substance of the testimony given before the grand jury, the strategy or direction of the investigation, the deliberations or questions of the grand jurors, and any other matter, the disclosure of which would suggest a specific act, thought, or focus of the grand jury's deliberations."  Luczynski Decl. ¶¶ 22-23.  As previously noted, Exemption (b)(3) "applies if the disclosed material would tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, or the deliberations or questions of jurors."  <u>Hodge</u>, 703 F.3d at 580 (internal quotations and citations omitted).  The plaintiff has not offered a reason to find that the EOUSA's direct application of Exemption (b)(3) to this grand

---

[8] While the ATF relies primarily on the 2012 appropriations language in its declaration, it does not do so exclusively, as it refers to similar language found in prior appropriations bills.  <u>See</u> Boucher Decl. ¶¶ 27-30.

jury-related information is improper.  Accordingly, the Court concludes that the ATF properly

withheld the grand jury related material under this Exemption.

### 3.  Exemption (b)(5)

Pursuant to Exemption (b)(5), an agency may withhold from FOIA disclosure "inter-

agency or intra-agency memorandums or letters which would not be available by law to a party

other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The Exemption

covers "those documents, and only those documents, normally privileged in the civil discovery

context."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975).  "[T]he needs of a

particular plaintiff are irrelevant to a court's determination of whether a particular

communication is exempt from disclosure under (b)(5)."  Am. Immigration Council v. U.S.

Dep't of Homeland Sec., 950 F. Supp. 2d 221, 237-38 (D.D.C. 2013) (citing Martin v. Office of

Special Counsel, Merit Sys. Prot. Bd., 819 F.2d 1181, 1184 (D.C. Cir. 1987)).

Relying on Exemption (b)(5), the EOUSA withheld information subject "to the attorney

work product and deliberative process privilege."  Luczynski Decl. ¶¶ 24-25.  Specifically, the

EOUSA withheld "trial preparation, trial strategy, interpretations, and personal evaluations and

opinions pertinent to [the] plaintiff's criminal case," id. ¶ 26, as well as "drafts of an indictment,

emails between attorneys, drafts of a prosecutorial memorandum, and all handwritten pages . . .

written by attorneys preparing the case," id. ¶ 28.  An attorney's "documents and tangible things

that are prepared in anticipation of litigation or for trial" are ordinarily protected under the

attorney work-product privilege.  Fed. R. Civ. P. 26(b)(3)(A).  The application of this privilege

requires the Court to consider "whether, in light of the nature of the document and the factual

situation in the particular case, the document can fairly be said to have been prepared or obtained

because of the prospect of litigation." <u>In re Sealed Case</u>, 146 F.3d 881, 884 (D.C. Cir. 1998) (internal quotation and citation omitted).

In light of the EOUSA's representations that these "records were prepared by or at the request or direction of an attorney, and made in anticipation of or during litigation," Luczynski Decl. ¶ 26, the documents in question fall within the attorney-work product privilege and are exempt from disclosure.  <u>See, e.g.</u>, <u>Sears</u>, 421 U.S. at 154 ("It is . . . clear that Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5 . . . [and] the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation . . . ." (citations omitted)).  The plaintiff has not offered justification for this Court to find the application of this Exemption improper.  Accordingly, the Court concludes that the EOUSA properly asserted Exemption (b)(5) for withholding this information.

**4.   Exemption (b)(7)**

Pursuant to Exemption (b)(7), and as relevant to the defendants' pending motion for summary judgment, an agency may withhold:

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, . . . [or] (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7).

**a.   Exemption (b)(7)'s Threshold Law Enforcement Requirement**

"To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."  <u>Blackwell v. FBI</u>, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal

quotations and citations omitted).  Based upon the representations submitted in each of the

defendants' affidavits, the records withheld by the defendants pursuant to Exemption (b)(7) meet

this threshold requirement.

The ATF is "a criminal and regulatory enforcement agency within the Department of

Justice responsible for, among other things, enforcing Federal firearms laws including the Gun

Control Act of 1968, 18 U.S.C. [Sections] 921-930, the Federal explosives laws, 18 U.S.C.

Chapter 40, and the National Firearms Act, 26 U.S.C. Chapter 53."  Boucher Decl. ¶ 31.  As the

ATF notes in its declaration, the responsive records withheld under Exemption (b)(7) "were

obtained by [the] ATF during an investigation [that] resulted in [the plaintiff's] eventual

conviction of arson for profit" and thus were "compiled during the course of a valid law

enforcement investigation."  Id. ¶ 32.  Thus, the ATF has sufficiently demonstrated a rational

nexus between its investigation of the plaintiff and the documents it has withheld under

Exemption (b)(7).  See, e.g., Roberts v. FBI, 845 F. Supp. 2d 96, 103 (D.D.C. 2012) ("It is

apparent from the nature of plaintiff's FOIA request that the information he seeks was compiled

for law enforcement purposes, namely, the criminal prosecution of [the] plaintiff.  Thus, the

[agency] meets its initial burden of establishing that the records at issue are law enforcement

records for purposes of Exemption 7.").  See also Blackwell, 646 F.3d at 40 ("[I]t is especially

convincing [that the requested information was compiled for law enforcement purposes] in this

case because [the plaintiff] explicitly sought records related to his own criminal prosecution.").

Similarly, the FBI asserts that it is:

> [T]he primary investigative agency of the federal government with authority and
> responsibility to investigate all violations of federal law not exclusively assigned
> to another agency, to conduct investigations and activities to protect the United
> States and its people from terrorism and threats to national security, and further
> the foreign intelligence objectives of the United States.  Under this investigative
> authority, the responsive records herein were compiled as result of the FBI's

> investigation related to national security and the FBI's assistance to other law enforcement entities . . . As relevant here, the FBI assisted other federal agencies as well as a local law enforcement agency in its criminal investigations into potential criminal activities concerning public corruption, murder, interstate transportation in aid of racketeering, and arson.  Thus, these records were compiled for a law enforcement purpose; they squarely fall within the law enforcement duties of the FBI.

Hardy Decl. ¶ 46.  Based upon these representations, and the fact that the plaintiff seeks "records related to his own criminal prosecution," the FBI has also demonstrated a "rational nexus" that satisfies Exemption (b)(7)'s threshold requirement.  See, e.g., Blackwell, 646 F.3d at 40; Roberts, 845 F. Supp. 2d at 103.

The EOUSA, a component of the DOJ responsible for responding to the FOIA request submitted to the entity that prosecuted the matter referenced by the plaintiff in his FOIA request, see Luczynsky Decl. ¶ 17, represents that the information it withheld pursuant to Exemption (b)(7) "was necessarily compiled for law enforcement purposes," Defs.' Mem. at 16.  In light of the substance of the plaintiff's FOIA request, demanding "all investigative material" regarding his prosecution, Luczynski Decl. ¶ 6, the Court finds that the EOUSA has demonstrated a "rational nexus" between the plaintiff's criminal investigation and the documents withheld.  See, e.g., Blackwell, 646 F.3d at 40; Roberts, 845 F. Supp. 2d at 103.

### b.  Exemption (b)(7)(C)

Exemption (b)(7)(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  "In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption [(b)(7)(C)], [the Court] must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect."  ACLU v. U.S. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011) (internal quotations and citation omitted). The privacy interest at stake belongs to the individual, not the government

agency, <u>see</u> <u>U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press</u>, 489 U.S. 749,

763–65 (1989), and "individuals have a strong interest in [avoiding unwarranted association]

with alleged criminal activity," <u>Stern v. FBI</u>, 737 F.2d 84, 91–92 (D.C. Cir. 1984).  When

balancing the private interest against the public interest in disclosure, "the only public interest

relevant for purposes of Exemption [(b)(7)(C)] is one that focuses on 'the citizens' right to be

informed about what their government is up to.'"  <u>Davis v. U.S. Dep't of Justice</u>, 968 F.2d 1276,

1282 (D.C. Cir. 1992) (quoting <u>Reporters Comm.</u>, 489 U.S. at 773).  "As a general rule, third-

party identifying information contained in [law enforcement] records is 'categorically exempt'

from disclosure."  <u>Lazaridis v. U.S. Dep't of State</u>, 934 F. Supp. 2d 21, 38 (D.D.C. 2013)

(quoting <u>Nation Magazine, Wash. Bureau v. U.S. Customs Serv.</u>, 71 F.3d 885, 896 (D.C. Cir.

1995)).

### i.   The ATF's Application of Exemption (b)(7)(C)

"Pursuant to Exemption (b)(7)(C), the [ATF] withheld information relating to: (a) ATF

support staff, (b) ATF Special Agents, (c) Assistant United States Attorneys (AUSA) involved in

[the plaintiff's] prosecution, (d) non-law enforcement third parties, (e) state and local law

enforcement personnel[,] and (f) co-defendants."  Boucher Decl. ¶ 35.  The "ATF asserted

Exemption (b)(7)(C) to protect the identities of ATF Special Agents and local and state law

enforcement personnel, who are involved in law enforcement operations . . . because disclosure

might seriously prejudice their effectiveness in conducting investigations to which they are

assigned and subject them to unwarranted harassment."  <u>Id.</u> ¶ 37.  Similarly, with respect to the

"names and identifying information of third parties, including Assistant United States Attorneys,

ATF support personnel, non-law enforcement third parties and co-defendants," the ATF

concluded that this "information contained within its files must be withheld, because disclosure

of the information could reasonably be expected to cause the third parties referenced in its files and third party witnesses embarrassment, harassment, and harm, and would do little, if anything at all, to aid the public's understanding of ATF."  Id. ¶ 39.

The Court agrees with the ATF's conclusion that disclosure of this information regarding its personnel may hinder the ATF's ability to conduct ongoing investigations, may lead to unwarranted harassment, and may otherwise cause embarrassment and be an invasion of privacy as contemplated by the Exemption.  See, e.g., Banks v. U.S. Dep't of Justice, 813 F. Supp. 2d 132, 144 (D.D.C. 2011) ("Public identification of [law enforcement personnel] could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives" (internal quotation omitted)).  These concerns significantly outweigh what little benefit the public may gain with this information as to its understanding of the ATF's operations.  See, e.g. Schoenman v. FBI, 763 F. Supp. 2d 173, 198 (D.D.C.2011) (finding appropriate the withholding of information about FBI agents and support personnel, non-FBI federal government personnel, local and foreign law enforcement personnel, third parties of investigative interest, third parties who provided information to the FBI and third parties incidentally mentioned in FBI records); Voinche v. FBI, 412 F. Supp. 2d 60, 67-68 (D.D.C. 2006) ("the privacy interests of the individuals whose information was withheld by the FBI clearly outweigh the narrowly construed public interest in disclosure.").  The plaintiff has not otherwise challenged the ATF's assertion of Exemption (b)(7)(C), and the Court concludes that the ATF properly withheld this information.

### ii.   The EOUSA's Application of Exemption (b)(7)(C)

The EOUSA withheld, pursuant to Exemption (b)(7)(C), records pertaining to third party individuals, including "potential witnesses and law enforcement personnel, the release of which

could subject such persons to an unwarranted invasion of their personal privacy." Luczynsky

Decl. ¶ 33. Specifically, the EOUSA asserts that "[r]elease of such personal identifiers could

result in unwanted efforts to gain further access to such persons or to personal information about

them – or subject them to harassment, harm, or exposure to unwanted and/or derogatory

publicity and inferences – all to their detriment." Id. The EOUSA also determined that "there is

no countervailing public interest in the release of this privacy-protected information, because its

dissemination would not help explain government activities and operations." Id. ¶ 34. The

plaintiff has not offered justification to find that the EOUSA's withholding of this information

was improper. Accordingly, the Court concludes that the EOUSA properly asserted Exemption

(b)(7)(C) for this information.[9] See, e.g., Voinche v. FBI, 412 F. Supp. 2d at 67-68; Schoenman,

763 F. Supp. 2d at 198; Banks, 813 F. Supp. 2d at 144.

### iii.   The FBI's Application of Exemption (b)(7)(C)

Pursuant to Exemption b(7)(C), the FBI withheld "the names and/or identifying

information of FBI Special Agents . . . and FBI support personnel, as well as personnel from

other Federal Law Enforcement Agencies," Hardy Decl. ¶ 50, "the names and/or identifying

information concerning third parties who provided information to the FBI," id. ¶ 53, "the names

and identifying information of third parties in [the responsive documents] who are of

investigative interest to the FBI and/or other law enforcement agencies," id. ¶ 54, and "the names

and/or identifying information concerning third parties merely mentioned in [responsive]

records," id. ¶ 55.

---

[9] In addition to Exemption (b)(7)(C), the EOUSA also relied upon Exemption (b)(6) to withhold this information. Luczynksy Decl. ¶¶ 29-31. The Court having concluded that the EOUSA properly withheld this information pursuant to Exemption (b)(7)(C), it need not consider the applicability of Exemption (b)(6). See Larson, 565 F.3d at 862-63 ("[A]gencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other." (citation omitted)).

The FBI determined that "[t]he publicity associated with the release of an employee's identity in connection with a particular investigation could trigger hostility toward him/her." Id. ¶ 51.  "In contrast, the FBI could identify no discernible public interest in the disclosure of the names of these employees because their names and identifying information would not shed light on the operations and activities of the FBI." Id.  Similarly, the FBI withheld the names and identifying information of third parties because "they could be harassed, intimidated, or threatened with legal consequences, economic reprisal, or possible physical harm," and disclosure "would shed no light on the operations and activities of the FBI." Id. ¶ 53; see also id. ¶¶ 54-55.  Thus, the FBI determined that "the personal privacy interests in non-disclosure outweighed the public [interest] in disclosure." Id. ¶ 55.  The plaintiff does not offer justification to find otherwise.  Accordingly, the Court concludes that the FBI properly asserted Exemption (b)(7)(C) to withhold this information.[10] See, e.g., Voinche v. FBI, 412 F. Supp. 2d at 67-68; Schoenman, 763 F. Supp. 2d at 198; Banks, 813 F. Supp. 2d at 144.

### c.   Exemption (b)(7)(D)

Exemption (b)(7)(D) protects from disclosure information in law enforcement records that "could reasonably be expected to disclose the identity of a confidential source . . . [and] information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).  "A source is confidential within the meaning of [Exemption (b)(7)(D)] if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citation omitted).

---

[10] In addition to Exemption (b)(7)(C), the FBI also relied upon Exemption (b)(6) to withhold this information. Because the Court has concluded that the FBI properly withheld this information pursuant to Exemption (b)(7)(C), it need not consider the applicability of Exemption (b)(6). See Larson, 565 F.3d at 862-63 ("[A]gencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other." (citation omitted)).

### i.     The EOUSA's Application of Exemption (b)(7)(D)

Relying on Exemption (b)(7)(D), the EOUSA withheld records "contain[ing] information concerning the identities of individuals and material that the individuals provided in connection with the investigation of [the] plaintiff for violation of the federal criminal laws."  Luczynski Decl. ¶ 38.  According to the EOUSA, "if this information were released, individual informants would likely become targets of harassment or other forms of reprisal."  Id. ¶ 36.  Based upon this assessment, the EOUSA asserts in its declaration that the withheld records included "information that was provided with an express assurance of confidentiality, as well as information from which the assurance of confidentiality could be reasonably inferred."  Id. ¶ 38.  As the plaintiff does not offer justification to find otherwise, the Court concludes that the EOUSA properly asserted Exemption (b)(7)(D) for this information.  See, e.g., Santos v. DEA, No. 02-734, 2005 WL 555410, at *4 (D.D.C. Mar. 7, 2005) ("The Court finds that the DEA has properly invoked exemption (b)(7)(D) because the exemption permits the DEA to protect valuable data provided by informants who would be less likely to cooperate without the assurance of confidentiality."); Brunetti v. FBI, 357 F. Supp. 2d 97, 108 (D.D.C. 2004) ("This exemption provides for protection of all information provided by a confidential source if there has been an explicit assurance of confidentiality or circumstances existed which would have implied an understanding of confidentiality." (citation omitted)).

### ii.     The FBI's Application of Exemption (b)(7)(D)

Pursuant to Exemption (b)(7)(D), the FBI withheld "the names, identifying information, and/or information provided by third parties under an implied assurance of confidentiality."  Hardy Decl. ¶ 58.  The FBI represents that "[t]hese individuals provided information of value to the FBI, and in doing so, placed themselves in harm's way[] should the public become aware of

their cooperation" and thus contends that "it may be inferred that these individuals have a reasonable expectation that their identities and the information they provided would not be released to the general public." Id. ¶ 59. The FBI asserts that it "released as much segregable information as possible without disclosing the sources' identities." Id. As the plaintiff offers no justification to find otherwise, the Court concludes that the FBI properly asserted Exemption (b)(7)(D) to withhold this information.[11] See, e.g., Santos, 2005 WL 555410, at *4; Brunetti, 357 F. Supp. 2d at 108; see also Mays v. DEA, 234 F.3d 1324, 1328 (D.C. Cir. 2000) (noting that Exemption (b)(7)(D) applies to information derived from sources who were "granted confidentiality, either expressly or by implication").

### d. Exemption (b)(7)(E)

Exemption (b)(7)(E) protects from disclosure information in law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption [(b)(7)(E)] sets a relatively low bar for the agency to justify withholding: [r]ather than requiring a highly specific burden of showing how the law will be circumvented, exemption [(b)(7)(E)] only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." Blackwell, 646 F.3d at 42 (alteration in original) (internal quotation marks omitted).

---

[11] In addition to Exemption (b)(7)(D), the FBI also relied at times upon Exemptions (b)(6) and (b)(7)(C) to withhold this information. Hardy Decl. ¶ 58. Because the Court concludes that the FBI properly withheld this information pursuant to Exemption (b)(7)(D), it need not consider the applicability of Exemptions (b)(6) and (b)(7)(C). See Larson, 565 F.3d at 862-63 ("[A]gencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other." (citation omitted)).

### i.    The ATF's Application of Exemption (b)(7)(E)

The ATF invoked "Exemption (b)(7)(E) to withhold the information related to operational plans used to plan and implement the arrests of all of the members of the arson for profit scheme and TECS and NCIC computer file numbers." Boucher Decl. ¶ 41.  The ATF contends that disclosure of operational plans would permit individuals to circumvent the law because they "outline how law enforcement plans on conducting a law enforcement action . . . [and] include contingency plans." Id.  The ATF represents that computer file numbers were withheld because "[d]isclosure of such numbers and codes could allow individuals outside the agency to circumvent agency functions and gain access to sensitive investigative information . . . [,] or permit an individual to alter or create false records." Id.  According to the ATF, "[s]uch access could result in the circumvention of ATF's law enforcement duties." Id.  As the plaintiff has not offered justification to find otherwise, the Court concludes that the ATF properly withheld pursuant to Exemption (b)(7)(E) the operational plans regarding the plaintiff's arrest. See, e.g., Labow v. U.S. Dep't of Justice, __ F. Supp. 2d __, __, No. 11-1256, 2014 WL 4368954, at *13 (D.D.C. Sept. 4, 2014) (withholding non-public operational details regarding investigative techniques that are currently in use pursuant to Exemption (b)(7)(E) is appropriate); Muslim Advocates v. U.S. Dep't of Justice, 833 F. Supp. 2d 92, 103-104 (D.D.C. 2011) (law enforcement-related operational directives that are not publically disclosed are appropriate for redaction pursuant to Exemption (b)(7)(E)).  Similarly, the Court concludes that the ATF properly withheld TECS and NCIC computer file numbers pursuant to Exemption (b)(7)(E). See, e.g., Skinner v. U.S. Dep't of Justice, 893 F. Supp. 2d 109, 114 (D.D.C. 2012) (finding appropriate the redaction of TECS codes pursuant to Exemption (b)(7)(E)); McRae, 869 F. Supp. 2d at 169 ("On the theory that the redacted codes, case numbers, and other computer information

pertaining to the TECS, NCIC, and databases maintained by the North Carolina authorities are techniques and procedures for law enforcement investigation, the ATF adequately explained that disclosure of the information could reasonably be expected to risk circumvention of the law.").

### ii.      The FBI's Application of Exemption (b)(7)(E)

Relying on Exemption (b)(7)(E), the FBI withheld its "strategy for using a particular type of evidence gathered during its investigation" because "[r]evealing the utility of this type of information to the FBI would essentially instruct criminals on how best to maintain operational security when conducting their criminal activities."  Hardy Decl. ¶ 61.  The FBI also withheld, pursuant to this Exemption, information pertinent to the "investigative focus of specific FBI investigations" because "[r]evealing the broader investigative focuses as they relate to interconnected investigations would reveal the scope of the FBI's programs and the strategies it plans to pursue in preventing and disrupting criminal activity."  Id. ¶ 62.  The FBI therefore opines that releasing this information "would enable criminals to circumvent the law."  Id.  As the plaintiff has not offered justification to find otherwise, the Court concludes that the FBI properly withheld pursuant to Exemption (b)(7)(E) information pertaining to its investigatory strategies.  See, e.g., Labow, __ F. Supp. 2d __, __, 2014 WL 4368954, at *13; Muslim Advocates, 833 F. Supp. 2d at 103-104.

### I. CONCLUSION

For the foregoing reasons asserted by the defendants, and because the plaintiff offers no justification to find otherwise, the Court concludes that the defendants submitted sufficient factual detail to find that each defendant conducted a reasonable and adequate search of its records for documents responsive to the plaintiff's FOIA request, and released to the plaintiff all

information not otherwise subject to an applicable disclosure Exemption.  Accordingly, the Court must grant the defendants' motion for summary judgment.

       **SO ORDERED** this 20th day of November, 2014.[12]

REGGIE B. WALTON
United States District Judge

---

[12] An order consistent with this Memorandum Opinion will be issued contemporaneously.